## Templeman v. Salisbury, et al.

(Decided November 25, 1927.)

### Appeal from Boyd Circuit Court.

1. Sales.—Where insolvent buyer conceals his insolvency from the seller, and obtains goods with intent not to pay for them, the seller may treat the alleged sale as a nullity, and proceed against the purchaser, or any one acquiring the goods with notice of the fraud, as for a conversion of the property.
2. Appeal and Error.—Where plaintiff alleged that buyer purchased goods when insolvent without intending to pay for them, and that defendants accepted the goods from the buyer in settlement of actions against the buyer with knowledge of buyer's fraud, court's finding that transaction whereby defendants settled the actions was not tainted with fraud held conclusive.
3. Appeal and Error.—Where trial court's finding is not against the preponderance of the testimony in equity case, Court of Appeals is not authorized to disturb it.

WILSON & ROBINSON for appellant.

S. S. WILLIS for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, R. N. Templeman, was plaintiff below, and will hereafter be referred to as such. He filed his petition in equity in the Boyd circuit court against the partners composing the firm of Crystal Lumber Company, a partnership (hereinafter referred to as the partnership), the Crystal Lumber Company, a corporation (hereinafter referred to as the corporation), the Crystal Ice & Coal Storage Company (hereinafter referred to as the ice company), and J. J. Emerick, one of the two partners composing the copartnership of Rice-Emerick Lumber Company, all of whom in the aggregate will hereinafter be referred to as defendants.

The petition alleged that plaintiff sold and delivered to Emerick and his partner, C. L. Rice, who was not sued, a carload of lumber, for the agreed consideration of $1,079.57; that at the times the lumber was sold and delivered both Emerick and Rice were insolvent, and did not intend to pay for it, and that thereby they fraudulently procured the possession of it; that the other defendants had knowledge of the fraudulent intent and purpose of the purchasers, and by some kind of chicanery and fraud, unknown to plaintiff, they had obtained possession of the lumber, and had converted it or a portion of it to their use, and the prayer of the petition was for the specific recovery of all the lumber that could be identified, if any, and for judgment for the value of such portion of it as could not be identified. The answers filed by the respective defendants denied all of the material averments of the petition, and upon submission, after evidence taken by depositions, the court dismissed the petition, and to reverse that judgment plaintiff prosecutes this appeal.

It was both alleged and proven that some time prior to the purchase of the lumber Emerick and Rice endeavored to create a corporation to be known as Rice-Emerick Lumber Company, in which they were the largest stockholders, and that defendant Salisbury also subscribed for stock therein, and that the articles were signed and acknowledged and recorded with the county clerk, and also with the secretary of state; but no stock was ever issued, nor was any corporate act ever undertaken, nor any officers elected for the corporation. While matters were in that condition Emerick and Rice embarked in the lumber business in Ashland, adopting as their firm name that of the corporation which they attempted to organize, but failed to carry out, and as such partners they purchased the lumber business of the partnership, including its unexpired lease of the premises whereon it conducted its lumber business, and in which lease the ice company was lessor. The rental agreed to be thereafter paid by Emerick and Rice to the ice company was $300 per month, and the consideration paid by the same two individuals for the interest of the partnership was something more than $10,000, divided into two notes, the first of which was due in 10 days, and the second one in 20 days thereafter, and the partnership

dissolved on January 1, 1923; the transactions herein-before related having occurred in December, 1922.

It furthermore appears, both by the pleadings and proof, that after the second note of Emerick and Rice to the partnership became due the latter filed an action in the Boyd circuit court to recover thereon, and in which it attached the lumber business of Emerick and Rice that it had purchased from the partnership, including the involved carload of lumber that had been delivered and unloaded in the meantime. That suit was compromised by defendants therein surrendering all of the attached property, except the involved lumber, to the plaintiffs in that action, and the payment of certain sums not material in this case. In the meantime the ice company also sued Emerick and Rice for past-due rent and for damages for abandonment of their lease, and that action was compromised by defendants therein surrendering to the plaintiff therein (the ice company) the unsold portion of the lumber here involved, and also by the payment of some amount in cash. About that time the members of the former partnership formed a corporation and adopted for its name the same as that of the dissolved partnership (the Crystal Lumber Company), and those who had acquired the assets in the manner stated, including the involved lumber, sold such assets to that new corporation, and after that this action was filed, based on the grounds stated.

The only defendants who are made appellees are the ice company and W. M. Salisbury. The latter was the president of the former, and it is insisted that he had knowledge of the fraudulent intent of Emerick and Rice at the time they purchased and received the involved lumber to not pay for it, and with that knowledge, and as president of the ice company, he took over the lumber involved in settlement of the ice company's suit against Emerick and Rice, and that his knowledge as president of that company should be imputed to it, and that each of them thereby became liable to plaintiff for the conversion of the lumber.

The principle of law sought to be invoked by plaintiff is a familiar and undisputed one, and which is, in substance, that where a purchaser, at the time he buys goods, has no intention of paying for them, but fraudulently intends to obtain the possession through the guise of a purchase, the title does not pass, and the seller may treat the alleged sale as a nullity, and proceed against

the purchaser, or any one acquiring the property with notice, the same as against the converter of the property. That principle of law was recognized and upheld by this court in the cases of American-German National Bank v. Gray & Dudley, 129 Ky. 105, 110 S. W. 393, 33 Ky. Law Rep. 547, and Nashville Grain & Feed Co. v. American Co-operative Association, 203 Ky. 458, 262 S. W. 634, and which cases followed the general rule upon the subject.

For plaintiff to succeed against the purchaser under the invoked rule, three things are necessary, and must be established, which are (1) That the purchaser was insolvent at the time of the purchase; (2) that he concealed his insolvency from the seller, and the latter was without knowledge of it; and (3) that the purchaser did not intend to pay for the property when he purchased it and when it was delivered to him. An additional fact must be shown as against the assignee or transferee of the property, and which is that he must himself have knowledge of the purchaser's fraud, as bottomed on the above three facts.

The proof in this case completely fails to show that Rice, one of the partners of the purchasing firm, and who bought the involved lumber from plaintiff, was or is insolvent, or that he concealed it, if a fact, from plaintiff, and there is no testimony that he never intended to pay for the lumber. The same may be said as to the additional fact necessary to hold the two appellees herein, Salisbury and the ice company. The local agent of plaintiff, who negotiated the transaction of sale of the carload of lumber, testified that he had known Rice for a number of years, and that he had made many sales of lumber to him for plaintiff, both before and since the transaction here involved, and that he had never experienced any trouble in collecting from him on any of such sales. Not a syllable of proof appears in the record that Rice is insolvent, but, on the contrary, it is inferable from the testimony that he is and was a person of some means. He had been a lumber dealer for a number of years, and so far as the record shows he always paid for his purchases. There is nothing out of the ordinary method, or usual course of business, in the way and manner that defendants became possessed of the lumber sought to be recovered or its value. But the ice company and the partnership had causes of action against Emerick and Rice, and both of them availed themselves of it, and

both actions were settled upon terms which the parties had the right to make, and nothing appears to taint either of them with fraud on the part of either defendant or either appellee.

The court so found, and, unless that finding was against the preponderance of the testimony, we are not authorized to disturb it. It clearly is not so, and our only alternative is to affirm the judgment, which is accordingly done.